HIGGINS, Justice.
 

 The Police Jury of the Parish of St. James instituted this suit against the defendant land owners alleging that at its regular meeting on September 6, 1938, it adopted a resolution appointing a jury of freeholders to lay out a public road from the main river road to the forty arpent line in the Parish of St. James on the west bank of the Mississippi River, in accordance with the provisions of Section 3369 of the Revised Statutes (Dart’s Stat. § 3635); that after the freeholders had properly qualified by taking the oath required by law, they notified the defendant land owners, in writing, that they would proceed to trace and lay out a public road on September 29, 1938; that, on that date, they met and laid out a public road thirty-five feet in width, twenty feet of which was over the defendants’ property; that they fixed the full compensation for the property owned by the defendants and the damages they sustained at the sum of $360 and made a written report thereof to the Police Jury; that on October 4, 1938, the Police Jury, after notifying the land owners, in writing, adopted the proper ordinance dedicating the public road as traced and laid out by the jury of freeholders and appropriated the sum of $360, in full compensation for the twenty foot right-of-way taken and any damages the defendants suffered thereby; that on September 22, 1938, the Louisiana Highway Commission, in accordance with Act 20 of the Fpurth. Extra Session of the Legislature of 1934, approved the road; that during the years 1936 and 1937, due to the fact that the twenty-foot strip of the road in question had been used by the public, the Police Jury sponsored a Works Progress Administration project to grade, drain and hard-surface the road with gravel; that one of the defendant land owners was paid the sum of $167 for hauling some of the gravel, which was placed upon the road; that the defendant land owners have refused to accept the payment of the sum of
 
 *964
 
 $360 in full compensation for the right-of-way and payment of the damages; and that notwithstanding the fact that the road has been dedicated as a public road and, for more than one year, kept open to public use, so that the inhabitants in the rear of the Baytree Settlement might bring their crops to the market, the defendant land owners illegally placed a gate across the road and denied the public the use thereof. The plaintiff prayed that the dedication of the road be decreed valid; that the sum of $360 be deposited in the registry of the court; and that an injunction issue restraining the defendants from interfering with the public in the use of the road and commanding them to remove the gate or any obstructions to the free use of the public road.
 

 The defendants denied that' there was any public necessity for taking the property for the road and averred that the inhabitants in the rear of the Baytree Settlement had other private roads for ingress and egress to their homes and farms; and averred, in the alternative, in the event the court should hold that there was a public necessity for taking the right-of-way over their property for a public road, that the amount of compensation and damages awarded by the jury of freeholders and ratified by the Police Jury was manifestly inadequate.
 

 The case was tried on the merits and there was judgment in favor of the plaintiff, as prayed for, and the defendants have appealed.
 

 There is no dispute that the road was laid out and dedicated under the provisions of Section 3369, Revised Statutes (Dart’s Stat. § 3635), which reads as follows :
 

 “All roads to be hereafter opened and made, shall be laid out by a jury of freeholders, consisting of not less than six inhabitants of the parish where the said road is to be made, to be appointed for that purpose by the police jury; it shall be the duty of the said jury of freeholders to trace and lay out such road to the greatest advantage of the inhabitants, and as little as may be to the prejudice of inclosures, and assess such damages as any person may sustain.”
 

 In Police Jury of Evangeline Parish v. Thibodeaux, 158 La. 573, 104 So. 372, 375, this Court quoted the following from the case of Fuselier v. Police Jury, 109 La. 551, 33 So. 597:
 

 “ ‘If, for instance, the police jury of a parish wish to acquire a site for a courthouse or jail, it would expropriate the same under the Articles of the Code as amended by the Acts of 1886 and 1896.
 

 “ ‘But, if the police jury ordered the making of a public road in the country and had trouble with the owners of the lands over which it is to pass, it would proceed under section 3369 of the Revised Statutes to impose a mere servitude of passage over such land.’ ”
 

 With reference to the proof on the question of necessity for imposing the servitude on the defendants’ property, the evidence shows that there are more than twenty families who are compelled to depend upon the improved gravel road to go to and
 
 *966
 
 from their farms and to carry their crops from their farms to the market and necessities from the market to their homes; that while the private mud or dirt roads may be used, by permission of the owners thereof, with inconvenience and disadvantage during dry weather, they are impassible in rainy weather, because they become inundated at certain low points; that the defendants’ private road, which was taken in these proceedings, was also an unimproved road and because of its impassible condition in rainy weather they requested the Police Juror from their ward to have the road graveled or improved so that it could be used; that the members of the Police Jury, being of the opinion that the road had been previously laid out and dedicated as a public road, sponsored a Works Progress Administration project to have the road filled, graded, drained and surfaced with gravel; that for a year thereafter the public used this graveled road; that it was narrow and the defendants, who used trucks and trailers in connection with their sugar plantation, found it difficult for two motor vehicles to pass each other thereon and, therefore, they were interfered with in carrying their cane on the trucks and '.trailers; and that as a result of some arguments growing out of this situation, defendants placed a gate at the front entrance of the road and prohibited the public from using it.
 

 It is our opinion that the evidence shows that there was a public necessity for laying out and dedicating the road in question as a public one.
 

 Counsel for the defendants argue that there were other lands available over which the road could have been laid and, therefore, there was no necessity for establishing the servitude over the defendants’ property. As there was a necessity for establishing and dedicating a public road, the fact that there were other lands over which the road might have been laid does not show that there was no public necessity for the road but merely raises the issue whether the jury of freeholders traced and laid out the road to the greatest advantage of the inhabitants of the parish, with as little prejudice as possible to inclosures, as required by the statute. It is our opinion that the evidence shows that is exactly what the jury of freeholders did, because the defendants’ road had already been filled, drained and improved with public funds and had been actually used by the public for a period of one year. It was, therefore, the most logical, just and fair thing to all parties concerned for the jury of freeholders and the Police Jury, once the public necessity for the road was established, to have this road dedicated for public use.
 

 The next question is whether or not the award of $360 is adequate to compensate the defendants for the right-of-way over their land and for such damages which they might have suffered therefrom. It appears that the Borne family owned a farm of about sixty acres of land located a mile and two-tenths from the main highway or river road. In order that they could have a road from their farm to the main highway, they purchased a twenty-foot strip of land
 
 *968
 
 (2.9 acres) running from the highway to their farm for the price of $360, on September 26, 1899. They converted this strip of land into a private dirt road with ditches on both sides. For many years the Borne family used this dirt road in dry weather as a means of hauling their crops over it in carts. However, in rainy weather this dirt road was impassable and they were compelled to use the Laurel Ridge road. This condition continued until during the years 1936 and 1937, when the Police Jury sponsored the Works Progress Administration project to improve the road. One of the defendants was paid $167 for his services in hauling some gravel on the road with his truck. After the road was graveled, the inhabitants of the Baytree Settlement used it to convey their sugar cane by trucks and trailers to the market until the defendants erected a gate and prohibited the public from using it.
 

 The defendants claim that the road, as. it presently exists, is worth $10,000 to them, and that they have suffered damages to the extent of $2,500. The civil engineer who testified as a witness for the defendants stated that the road, as improved, was worth $3,387.60, without including the value of the right-of-way. This witness did not testify as to the value of the dirt road before it was graveled and improved with public funds. The members of the Police Jury being of the opinion that the road in question was a public one and having so certified it to the Works Progress Administration, funds of the Parish of St. James and the Federal Government were used to improve it. Certainly, the defendants are not entitled to receive compensation from the Police Jury for the road based on its present value because public funds were expended to make the road serviceable and valuable. The defendants are entitled to recover the value of the right-of-way for the road or the servitude over their land. The fact that the Borne family had previously constructed a dirt road upon the land must also be- taken into consideration in fixing the compensation therefor. The testimony shows that they placed open ditches alongside the twenty foot strip of land and occasionally placed dirt filling thereon and scraped the road with a machine. Nevertheless, it remained a dirt road, which was not well drained and in rainy weather it was impassable, particularly in low spots which were subject to inundation. Some of the defendants testified that they expended from $200 to $700 per year to maintain the road, but upon cross-examination they were unable to furnish any satisfactory details to justify that statement other than that occasionally a road machine was used for the purpose of scraping the road and that $5 a day was paid to the operator of the machine.
 

 It is our view that, as the jury of freeholders only took into consideration the amount of the purchase price of $360, which was paid for the land 39 years ago, and failed to consider the fact that over this narrow strip of land the Borne family did erect a dirt or farm road and that they did maintain and use it as such for many years, the defendants were entitled to receive a sum in addition to the price which was paid
 
 *970
 
 for the land. It is our view that the defendants are entitled to an additional sum of $300.
 

 While it is true a right-of-way or servitude and not a fee simple title was taken by the Police Jury, due to the fact that this road was dedicated as a public one, the naked title and the reversionary interest would be of little value to the defendants and, therefore, we feel that the jury of freeholders correctly fixed the value of the right-of-way at the same amount which the land cost, particularly in view of the fact that that was the purchase price paid for it many years ago.
 

 As far as the damages are concerned, some of the defendants admitted in their testimony that the road has been a great convenience to them since it has been improved and that they are now able to use their trucks and trailers to bring their sugar cane to the market, whereas, heretofore they were not able to do so, and that the only inconvenience which they have experienced was when two vehicles going in opposite directions met on the graveled road, one of them was required to pull off to the side or unimproved part of the road near the ditch in order that the other might pass. We are of the opinion that the convenience and -advantages that the defendants have obtained from the improved road offset the inconvenience which they have pointed out and that no damage is due on that score.
 

 The claim for damages for attorneys’ fees and expenses of going to court for the purpose of trying the case cannot be allowed under the law.
 

 For the reasons assigned, it is ordered, "adjudged and decreed that the judgment of the district court be amended by increasing the award from the sum of $360 to the sum of $660, and, as thus amended, the judgment is affirmed; appellee to pay the costs of court.
 

 O’NIELL, C. J., does not take part.